IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

HAYLEY JUSTINE STORM BROOME, )
)
        **Plaintiff,** )
)
v. ) Case No. 22-CV-158-DES
)
KILOLO KIJAKAZI, )
Acting Commissioner of the Social )
Security Administration, )
)
        **Defendant.** )

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Hayley Justine Storm Broome ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.**     **Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920(a)(4). This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On August 5, 2020, Claimant protectively applied for supplemental security income benefits under Title XVI of the Act. (R. 54, 468-73). Claimant alleges she has been unable to work since an amended onset date of August 5, 2020, due to scoliosis, posttraumatic stress disorder ("PTSD"), and depression. (R. 54, 421, 504). Claimant was 25 years old on the date of the ALJ's decision. (R. 66, 79). She has a high school education and past relevant work as a dietary aide, warehouse worker, and sandwich sales clerk. (R. 64, 505).

Claimant's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 324-62, 382-84). ALJ Michael Mannes conducted an administrative hearing and issued a decision on October 5, 2021, finding Claimant not disabled. (R. 54-66, 77-115). The Appeals Council denied review on June 3, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on May 23, 2022. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since her application date of August 5, 2020. (R. 56). At step two, the ALJ found Claimant had severe impairments of cervical spine degenerative disc disease, lumbar spine degenerative disc disease, obesity, headaches, and anxiety with depression. (*Id.*). The ALJ further found Claimant had the non-severe impairments of vertigo, bilateral astigmatism, and cataracts. (R. 57). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 57-59).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with:

> occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; and frequent

handling and fingering bilaterally. She must avoid frequent exposure to unprotected heights and dangerous machinery. She can understand, remember, and carry out simple, repetitive tasks with routine supervision. She can focus for two-hour periods with routine work breaks and pace and persist for an eight-hour work day and 40-hour work week. She can tolerate frequent interaction with supervisors and coworkers, and occasional interaction with the general public. She can respond appropriately to changes in a routine work setting.

(R. 60). The ALJ provided a summary of the evidence that went into this finding. (R. 60-64).

At step four, the ALJ concluded that Claimant could not return to her past relevant work. (R. 64). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including cotton classer aide, routing clerk, and small product assembler. (R. 65). Accordingly, the ALJ concluded Claimant was not disabled. (R. 66).

**IV.    Issues Presented**

Claimant raises the following points of error in her challenge to the Commissioner's denial of benefits, which the undersigned re-organizes for clarity: (1) the ALJ failed to properly evaluate the medical source opinions of state agency physicians Dr. Laura Lochner and Dr. Cynthia Kampschaefer (Docket No. 19 at 5-10); (2) the ALJ failed to properly evaluate the consistency of her subjective symptoms (*id.* at 10-11); and (3) the ALJ failed to present a hypothetical question to the VE that included all her limitations (*id.* at 3-5). The Court finds no reversible error in the ALJ's decision.

**V.     Analysis**

    **A.    ALJ Properly Evaluated the Opinions of Drs. Lochner and Kampschaefer**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-

related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 416.913(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." 20 C.F.R. § 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 416.920c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[1] 20 C.F.R. § 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 416.920c(b)(2), (3).

On September 4, 2020, state agency psychologist Dr. Lochner reviewed Claimant's mental health records and completed a Mental Residual Functional Capacity Assessment ("MRFCA"),

---

[1] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. § 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

wherein she indicated Claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public, but was otherwise not significantly limited. (R. 334-37). In the narrative section of her MRFCA form, Dr. Lochner explained that Claimant could: (1) perform 3 to 4 step repetitive tasks with routine supervision; (2) focus for 2-hour periods with routine breaks and pace and persist for an 8-hour work day and 40-hour work week despite psychological symptoms; (3) interact appropriately with coworkers and supervisors to learn tasks, accept criticism and cooperate in frequent interactions; and (4) adjust to intermittently changing tasks and adapt to moderately fast-paced pressure in a usually variable work situation. (R. 337). Dr. Kampschaefer affirmed these findings on review in December 2020. (R. 356-59).

As an initial matter, Claimant asserts that the ALJ did not mention the required factors under 20 C.F.R. § 416.920c(c)(1)-(5) when evaluating the persuasiveness of the opinions of Drs. Lochner and Kampschaefer. (Docket No. 19 at 9). Contrary to Claimant's assertion, the ALJ is not required to articulate findings on all the relevant factors when, as here, there are two identical medical source opinions. 20 C.F.R. § 416.920c(b)(2), (3). Rather, as set forth above, the ALJ must *consider* all the factors, but must only *explain* how he considered the factors of supportability and consistency. 20 C.F.R. § 416.920c(b)(2).

In his written opinion, the ALJ thoroughly summarized the opinions of Drs. Lochner and Kampschaefer. (R. 63). The ALJ then found their opinions "largely persuasive" because they were *supported* by the evidence they cited, including the consultative mental status examination and Claimant's function report, and because they were *consistent* with other evidence in the record, specifically, the dearth of mental complaints and Claimant's testimony of improvement with counseling. (*Id.*). Because the opinions of Drs. Lochner and Kampschaefer were identical, nothing

6

more was required. Accordingly, the ALJ appropriately evaluated the persuasiveness of the opinions of Drs. Lochner and Kampschaefer using the factors set forth in 20 C.F.R. § 416.920c.

Claimant next asserts that the opinions of Drs. Lochner and Kampschaefer are internally consistent. This is so, because according to Claimant, "one cannot have a moderate limitation in the ability to understand, remember and carry out detailed instructions and still be able to perform 3 or 4-step repetitive tasks." (Docket No. 19 at 6). Claimant points to no authority supporting this contention and never explains why a limitation to 3 or 4-step repetitive tasks does not account for a moderate limitation in understanding, remembering, and carrying out detailed instructions. Nonetheless, Claimant alleges the ALJ erred by failing to rectify this evidentiary inconsistency as required by Social Security Ruling 96-8p.[2]

Notably, an ALJ can account for moderate limitations that a medical source assesses by "limiting the claimant to particular kinds of work activity" in the RFC assessment. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."). Therefore, asking "how the administrative law judge's assessment incorporates the numerous moderate limitation ratings indicated by [the state agency psychologists] . . . is the wrong question." *Smith*, 821 F.3d at 1269, n. 2. Because the initial functional limitation ratings serve "only as an aid to [the state agency psychologists'] assessment of residual functional capacity," a reviewing court should compare the ALJ's findings to the state agency psychologists' "opinion on residual functional capacity, not her notations of moderate limitations." *Id.* Thus, the question is whether the ALJ sufficiently

---

[2] In assessing the RFC, "[t]he adjudicator must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

addressed the state agency psychologists' narrative limitations in the RFC assessment. *See, e.g., Lee v. Colvin,* 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (holding where the ALJ's RFC assessment "included, essentially verbatim, the limitations from Section III of the MRFCA," the ALJ "was not also required to specifically adopt or discuss each individual limitation described in Section I.").

In *Smith*, the Tenth Circuit expressly recognized that an RFC limitation of "simple tasks and work requiring only routine superficial interaction with supervisors and peers" accounted for a number of moderate nonexertional limitations identified by the state agency psychologist. *Smith,* 821 F.3d at 1268-69. In this case, the ALJ not only found Dr. Lochner's and Dr. Kampschaefer's opinions largely persuasive, but he also adopted their narrative RFC limitations as to focus and social interactions with supervisors and co-workers essentially verbatim, and ultimately imposed a *more restrictive* RFC by limiting Claimant to occasional interaction with the general public, and only "simple, repetitive tasks with routine supervision." (R. 60). Importantly, this RFC effectively limited Claimant to unskilled work, which does not require the ability to understand, remember, or carry out detailed instructions. *See, e.g., Nelson v. Colvin,* 655 F. App'x 626, 629 (10th Cir. 2016) (unpublished) (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)). The ALJ thus accounted for all the limitations identified by Drs. Lochner and Kampschaefer. To the extent Claimant asserts the ALJ erred by not mentioning Claimant's ability to perform detailed or complex tasks, the Court finds no reversible error in assigning a greater RFC limitation than identified by Drs. Lochner and Kampschaefer. *See Terwilliger v. Comm'r Soc. Sec'y Admin.,* 801 F. App'x 614, 628 n. 9 (10th Cir. 2020) (unpublished) ("'[W]e are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably' to the claimant.") (quoting *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012)). "'[I]f a medical

opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.'" *Id.*

> B. **ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms**

Claimant next contends the ALJ erred in evaluating her subjective symptoms because he did not discuss the required factors. (Docket No. 19 at 10-11). Claimant's argument is belied by the record.

The ALJ is required to consider Claimant's subjective complaints, or symptoms[3] in determining the RFC. 20 C.F.R. § 416.929(a) & (d)(4). The Commissioner uses a two-step process when evaluating a claimant's symptoms.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929. First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's ability to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of

---

[3] Symptoms mean a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n).

[4] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna. Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulates so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. In his written decision, the ALJ thoroughly summarized Claimant's administrative hearing testimony. (R. 60). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the diagnostic studies, objective medical findings and reports, and Claimant's own statements. (R. 61). In reaching this conclusion, the ALJ discussed numerous inconsistencies between Claimant's subjective complaints and the evidence of record, including: (1) Claimant rarely, if ever, was noted to be in acute distress on examination; (2) February 2020 lab results showed normal inflammatory biomarkers; (3) a November 2020 cervical spine MRI revealed minimal early posterior disc bulging at C4-5 and C5-6 causing minimal early effacement of the anterior thecal sac and no significant foraminal stenosis; (4) November 2020 thoracic and lumbar spine MRIs were unremarkable; (5) Claimant rarely, if ever, exhibited any deficits in reflexes or sensation on examination; (6) Claimant only

intermittently exhibited lumbar spine tenderness, left and right sacroiliac tenderness, moderate pain with lumbar spine range of motion, cervical spine tenderness, and moderate pain with cervical spine range of motion; (7) Claimant rarely, if ever, exhibited any deficits in sensation or in grip strength or gross or fine manipulation; (8) Claimant testified that her hobbies include sewing, crocheting, coloring, and playing games on her phone; (9) a June 2021 physical examination was entirely within normal limits; (10) chiropractic treatment and medications were helpful; (11) Claimant denied difficulty walking, paresthesia, poor coordination, muscle weakness, anxiety, and depression, and her neurological examination was normal at an appointment to establish care with a new provider in July 2021; (12) Claimant reported that her mood was "good for the most part" at the consultative mental status examination in September 2020; (13) Claimant was rarely, if ever, noted to be dizzy or drowsy on examination; and (14) Claimant reported improvement with counseling. (R. 61-62).

Claimant asserts that the ALJ failed to consider the factors in 20 C.F.R. § 416.929(c)(3). As set forth above, the ALJ provided numerous reasons, supported by the record, for finding Claimant's symptoms were not as severe or functionally limiting as alleged. The ALJ's thorough analysis reflects that he considered the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 60-61); precipitating and aggravating factors (*id.*); the side effects of medications (R. 61); her treatment aside from medication (R. 62.); and other factors, including her treating providers' examination findings (R. 61-62). In any event, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, SSR 16-

3p, and the regulations. Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185 (10th Cir. 2008). Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.* Because Claimant points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence and interpret in her favor, which it cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).

      **C.**     **ALJ's Hypothetical Question was Proper**

Finally, Claimant contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including the additional limitations she claims, particularly with respect to her non-severe vision impairments. In essence, Claimant argues the ALJ failed to consider her non-severe vision impairments when assessing the RFC, which caused him to present an incomplete hypothetical question to the VE. The Court disagrees.

Regarding her non-severe vision impairment, Claimant points to her March 2021 ophthalmology exam wherein she was diagnosed with bilateral astigmatism and cataracts. However, the mere "diagnosis of a condition does not establish disability. The question is whether a person's impairment significantly limits h[er] ability to engage in substantial gainful activity." *Madrid v. Astrue,* 243 F. App'x 387, 392 (10th Cir. 2007) (unpublished). As the ALJ explained at step two, there is no evidence that Claimant's astigmatism and cataracts cause more than

minimal limitations in work activities. (R. 57). In fact, Claimant's treating ophthalmologist indicated cataract treatment was not indicated because Claimant's cataracts were not "mature" enough. (R. 1187). Moreover, Claimant did not include astigmatism or cataracts among her disabling impairments in her disability application materials. (R. 504). In any event, the ALJ specifically explained that he considered all of Claimant's impairments, including those deemed non-severe, as part of the RFC assessment. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013) (holding that "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*" in assessing the RFC); *see also* 20 C.F.R. § 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including . . . impairments that are 'not severe' . . . when we assess [a claimant's] residual functional capacity."). The ALJ further explained that the RFC accounted for "the functional limitations that could reasonably be expected to arise from the claimant's nonsevere impairments of . . . bilateral astigmatism and cataracts" and that such impairments did not necessitate additional functional limitations. (R. 64). The ALJ thus sufficiently explained why he omitted vision-related limitations from the RFC and his RFC was therefore proper. The Court has found no error in the RFC assessment, and the ALJ's hypothetical question to the VE was consistent with his RFC (*compare* R. 60 *with* R. 108-09). As such, Claimant's argument with respect to the hypothetical question fails. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) (where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision"); *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995) (step-five hypotheticals "must include all (and only) those impairments borne out by the evidentiary record").

**VI.     Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 29th day of September, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE